UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------,
Larisa Tsekhanskaya,

               *Plaintiff*,               **MEMORANDUM & ORDER**

   -against-                         18-CV-7273 (KAM)(LB)

The City of New York, The Department of
Health and Mental Hygiene of the City
of New York,

               *Defendants*.
---------------------------------------X
**MATSUMOTO, United States District Judge:**

        Plaintiff Larisa Tsekhanskaya ("plaintiff") commenced this action, *pro se*, against defendants, the Department of Health and Mental Hygiene of the City of New York ("DOHMH") and the City of New York (collectively, the "defendants") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.,* 42 U.S.C. § 1981, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.,* the Rehabilitation Act of 1973 ("Rehab. Act"), 29 U.S.C. § 794, *et seq.*, and the New York State Human Rights Law ("SHRL"), N.Y. Exec. L. § 290, *et seq.* Plaintiff alleges that she was the victim of employment discrimination on the basis of national origin, gender, age,

religion, race and disability.  Plaintiff also alleges
retaliation and denial of leave under the FMLA.  (*Id.*)

Presently before the court is defendants' motion to
dismiss on the grounds that plaintiff's claims are time-barred,
procedurally barred, prolix in violation of Federal Rule of
Civil Procedure 8(a)(2), and fail to state a claim under Federal
Rule of Civil Procedure 12(b)(6) ("Motion").  (*See* ECF No. 22,
Defendants' Memorandum in Support of Motion; ECF No. 23,
Defendants' Reply Memorandum in Further Support of Motion.)  For
the reasons set forth below, the court **grants** defendants' motion
to dismiss the amended complaint in its entirety.

<u>**BACKGROUND**</u>

**I. Factual Background**

The background facts and allegations have been taken
from the plaintiff's Amended Complaint.[1]  On a motion to dismiss,
the court "must accept all allegations in the complaint as true
and draw all inferences in the non-moving party's favor."
*LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475
(2d Cir. 2009) (quoting *Patel v. Contemporary Classics of
Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001)).  Plaintiff is a
licensed master social worker ("LMSW"), formerly employed as a
social worker by the New York City Department of Health and

---

[1] The court cites to the ECF pagination, rather than the native page numbers,
which are out-of-order and repetitive.

Mental Hygiene ("DOHMH") from 2011 through January 2017.  (Am. Compl. at 12, 18, 20, 26.)  Plaintiff alleges that, in 2011, DOHMH retaliated against her by transferring her from Brooklyn to Queens "under protest."  (*Id.* at 20.)  Plaintiff does not specify the reason for defendants' alleged retaliation against plaintiff.

Plaintiff also notes that she filed a complaint "with EEOC, DOHMH EEOC, and union grievances" in 2012, and asserts that her complaints "resulted in retaliation, a hostile work environment, isolation, harassment, repeated false accusations, [being] singled out and being forced [to sit] for long meetings in windless offices[.]"[2]  (*Id.*)  Plaintiff alleges that, in June 2012, a "Dr. Velazquez" made unspecified "derogatory remarks" and exhibited "inappropriate behavior" toward her and three other individuals.  (*Id.* at 29.)  Further, in June 2012, plaintiff was mandated to undergo a psychiatric evaluation "or face termination."  (*Id.*)  Plaintiff apparently asserts that the psychiatric evaluation was foisted upon her "because of her discrimination complaints," as well as unspecified "false accusations, the bright colors of plaintiff's clothing . . . [and] her coworkers' belief that plaintiff fabricated a family death . . . in order to take vacation," among other things.

---

[2] The Amended Complaint contains repetitive allegations, which appear to be copy-pasted in bulleted form and in numbered paragraphs.  (*See, e.g.*, Am. Compl. at 20.)

(*Id.* at 29-30.)  Following the 2012 psychiatric evaluation performed by a "city consultant," the consultant allegedly produced a written report that plaintiff was unfit to work as a supervisor of social work, to which plaintiff objected.  (*Id.*)

After providing evaluations to plaintiff's supervisor, Tessler-Handler, from private physicians finding that plaintiff was mentally fit to work, plaintiff was permitted to return to work in August 2012.  (*Id.* at 31.)  Upon plaintiff's return to work, plaintiff heard rumors spread by Randi Krittman, a social worker, and Jessica Wolff, a Labor Relations attorney, that plaintiff had spent time in a psychiatric hospital, which she believes evinces "Defendants' animus toward plaintiff based on her perceived disability of mental illness."  (*Id.*)  In 2013, plaintiff was allegedly given an unsatisfactory performance evaluation for taking "too much of approved and documented sick leave," and was transferred to the Queens office.  (*Id.* at 31-32.)  In December 2013, plaintiff filed a request for reasonable accommodation for a "1-2 hour flex band," which was denied. (*Id.* at 32.)  Plaintiff was also allegedly considered and not selected for a promotion in 2013 and 2014.  (*Id.*)  Plaintiff also alleges that it was "difficult" to take sick leave for medical appointments and treatments for breast cancer.  (*Id.*)

Though the Amended Complaint includes contradictory allegations, as best as the court can discern, in October 2016,

plaintiff was again found psychologically unfit to return to work during a psychological evaluation performed by Dr. David Salvage.[3]  (*Id.* at 22-23.)  That month, plaintiff was placed on "involuntary medical leave" but continued working under the supervision of a supervisor named "Hulbrock."  (*Id.* at 24.)

Plaintiff accuses coworkers including Cheryl Charles, Randi Krittman, Joanne Mclean-Ernoni, Daniel Garza, Roland Hill, Nancy Hulbrok and others of giving her excessive work, subjecting her to verbal abuse, spreading rumors, bullying her, making passive aggressive comments, and denying her requests for work accommodations.  (*Id.* at 30-45.)  Plaintiff asserts that these actions were either retaliation for the complaints she had filed or because of her religion, ethnicity and gender.[4]  (*Id.* at 30-45.)

The complaint states that from December 26, 2013 to December 26, 2014, plaintiff was approved for FMLA leave.  (Am. Compl. at 36-37.)  Plaintiff alleges that her subsequent requests for renewal of leave were initially denied and later approved.  (*Id.* at 37.)  It is unclear what the alleged bases

---

[3] Plaintiff makes reference to her "perceived mental illness" and her "disability," yet states Dr. Salvage "found plaintiff psychologically to be fit to work."

[4]  For example, plaintiff's coworker Cheryl Charles allegedly called plaintiff a "Russian bitch," and Joanne Mclean-Ernoni laughed.  (*Id.* at 45-46.) Plaintiff recalls that Monica Medina, psychologist, complained that she "spend [sic] 40% of her time to watch Tsekhanskaya" and "does not want a disable [sic] woman with knees [sic] problems...does not want Russian Woman...and said that plaintiff should buy her expensive car...because Jewish people are rich."  (*Id.* at 45.)

for the FMLA requests were, although the complaint includes
various ailments plaintiff suffered including, a knee injury,
breast cancer and "WTC related" disability.  (*Id.* at 4, 17, 22,
45.)  Plaintiff made various requests for "flex time" to the
DOHMH Equal Employment Opportunity office as well as a request
for transfer, which were denied.  (*Id.* at 37-38.)

Plaintiff alleges coworkers retaliated against her in
connection with her requests for FMLA leave and accommodation.
Plaintiff says that when she gave McLean-Ernoni a doctor's note
for a "1-2 hour flex band" in January 2016, Ernoni began
shouting at her and making aggressive gestures.  (*Id.* at 44-45.)
McLean-Ernoni eventually, "stopped and asked Tsekhanskaya why
she was covering her face because McLean-Ernoni was not going to
hurt Tsekhanskaya because she loves her job too much and was
never arrested for violence before."  (*Id.*)  Plaintiff further
asserts that the real reason the flex time request was not
granted was because Ms. Hulbrock, who was herself a patient at
Memorial Sloan Kettering Medical Center, did not believe
plaintiff had a breast cancer diagnosis.  (*Id.* at 50.)
Plaintiff alleges that, in December 2016, Roland Hill yelled and
pointed his finger in plaintiff's face in an aggressive manner,
but plaintiff does not specify what prompted this alleged
outburst.  (*Id.* at 51.)  After plaintiff threatened Mr. Hill
that she would call 911, Mr. Hill left the confrontation.  (*Id.*

at 52.)  Plaintiff also alleges that union and security
officials refused to provide her with a video of the incident.
(*Id.* at 49-50.)

## II. Procedural History

Plaintiff's Prior Administrative Complaints

In July 2016, plaintiff filed a complaint with the
Department of Labor ("DOL") regarding the DOHMH's refusal to
grant her FMLA request.  (*Id.* at 6, 13.)  In September 2016, the
DOL requested that plaintiff provide documentation and
information relating to her FMLA complaint.  (*Id.* at 14-15.)
Plaintiff claims to have received a Notice of the Right to Sue
letter from the DOL in August 2016, but did not attach it to her
Amended Complaint.  (*Id.* at 6.)

On December 27, 2017, almost one year after her
retirement from DOHMH, plaintiff filed an administrative
complaint with the New York State Division of Human Rights
("SDHR"), alleging that she was discriminated against in
employment, on the basis of national origin and disability, and
retaliated against.  (*Id.* at 10; ECF No. 21, Declaration in
Support; ECF No. 21-1, Ex. A, Complaint to Division of Human
Rights).)  In her SDHR complaint, plaintiff alleged that six
coworkers made disparaging comments about her, including
statements expressing hatred or dislike toward: Russians,
Russian Jews, Hasidic Jews, Russian language speakers and

accusing plaintiff of being a Russian spy or member of the
Russian mafia.  (ECF No. 21-1 ¶¶ 15-33.)  Plaintiff also alleged
that various coworkers called her "chemo brain" following her
cancer diagnosis, hit her with a bag, physically threatened her
and retaliated against her by placing her on involuntary leave
and bringing misconduct charges against her.  (*Id*. at ¶¶ 24, 34-
61.)

        DOHMH responded to plaintiff's administrative
complaint, by vehemently denying plaintiff's accusations of
misconduct.[5]  (ECF No. 21-2, Ex. B, DOHMH Opposition to
Complaint, at 2-6.)  Regarding defendants' decision to place
plaintiff on involuntary leave pursuant to Civil Service Law §
72, DOHMH stated that the department's actions were taken in
response to plaintiff's "paranoia, cognitive disorganization,
anxiety, and harassing argumentative behavior" which rendered
her incapable of performing her work duties and caused
significant disruption for the rest of the office.  (ECF No. 21-
2 at 25.)  Examples of this purported behavior included filing
dozens of complaints against numerous coworkers, sending
thousands of repetitive and off-topic emails, printing 2,299

---

[5] The court properly considers defendants' documents regarding plaintiff's
SDHR complaint, which are integral to plaintiff's claim.  *See Chambers v.
Time Warner, Inc.*, 282 F.3d 147, 153 n.3 (2d Cir. 2002) (a court may properly
consider materials referred to in plaintiff's complaint and central to her
claim).  Further, a court "may consider an undisputedly authentic document
that a defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  *Id.* (citation omitted).

pages of irrelevant documents in a single month, wandering the halls long after work hours, neglecting responsibilities, and spitting in a communal coffee pot in the employee kitchenette. (*Id.* at 2-7, 24-27, 45-46, 49-51.)  An independent psychiatric evaluation in 2016 found plaintiff unfit for work and plaintiff was placed on involuntary leave under Civil Service Law § 72. (*Id.* at 5-6; Am. Compl. at 23.)  Plaintiff entered a request for disability retirement benefits, which was denied, and began ordinary retirement on January 26, 2017.[6]  (ECF No. 21-2 at 6.)

On July 5, 2018, the New York SDHR determined that most of plaintiff's allegations were beyond the one-year statute of limitations for her claims, and to the extent they were not time-barred, the allegations did not support a discriminatory hostile work environment claim.  (*Id.*) Further, the SDHR noted that plaintiff was found mentally unfit to return to her employment by a physician, and that the SDHR was unable to second-guess a medical opinion.  (*Id.*)

Plaintiff did not cross-file her SDHR complaint with the Equal Employment Opportunity Commission ("EEOC").  (ECF No. 14 at 1, 3.)

---

[6] As noted in the SDHR's administrative Order, plaintiff had unsuccessfully applied for "disability retirement, despite repeated claims in [the SDHR complaint] that she does not have a disability of any kind[.]"  (*Id.*)

The Present Litigation

On December 20, 2018, plaintiff commenced this action, seeking relief under Title VII, the ADA, the ADEA, the FMLA, the Rehab. Act, and the SHRL. (*See* Orig. Compl.) On May 24, 2019, defendants filed their first request for a pre-motion conference, requesting to move to dismiss the complaint. (ECF No. 7, First Motion for pre motion conference.) Plaintiff filed a 12-page letter in opposition to defendants' request. (ECF No. 9, Letter.) On June 27, 2019, the parties participated in a pre-motion conference, at which the court, with defendants' agreement, granted plaintiff leave to amend her complaint and advised the *pro se* plaintiff that she could contact the Pro Se Office for assistance with amending her complaint. The court further ordered plaintiff to file her first amended complaint by July 31, 2019, and provided that defendants may request a pre-motion conference if they still intended to dismiss plaintiff's first amended complaint ("FAC"). (Minute Entry & Order dated 6/27/2019.)

Plaintiff filed her FAC on July 31, 2019. (*See* Am. Compl.) On August 19, 2019, defendants filed a second request for pre-motion conference in regard to their anticipated motion to dismiss the FAC. (ECF No. 12.) As before, plaintiff filed an overlength, 17-page letter in response to defendants' request. (ECF No. 14, Letter.) Following a pre-motion

10

conference held in September 2019, the court ordered a stay of discovery pending resolution of defendants' motion to dismiss the complaint and set a briefing schedule.  (Dkt. Order dated 9/5/2019.)

On January 6, 2020 defendant filed its motion to dismiss for violating the pleading requirements of Rule 8 and failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 20, Motion to Dismiss; ECF No. 21, Affidavit in Support; ECF No. 22, Mem. in Support; ECF No. 23, Reply.)  Plaintiff's affidavit in opposition to defendants' motion is 22 pages over this court's page limit, and plaintiff has not sought leave to exceed the court's page limit.  (ECF No. 18; *see* Chambers Practices of Judge Kiyo A. Matsumoto, Rule III(C)(2).)  Plaintiff also filed a 96-page "Exhibit A," which includes over a dozen separate documents.  (ECF No. 19.)  In addition to being prolix, both of plaintiff's submissions in opposition to defendants' motion are disjointed, not in chronological order and include extraneous materials that are not properly identified or explained.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 8(a)(2)

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint "shall contain...a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) mandates a short and plain statement because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (dismissing an 80 page complaint which "contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension[,] fail[ing] to comply with the requirement of Rule 8"). When a complaint fails to comply with the requirements of Rule 8, "the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Id*. However, "dismissal is 'usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Baskerville v. Richmond Cty. Family Court*, No. 19-CV-602 (AMD) (LB), 2019 WL 1261962, at *3 (E.D.N.Y. Mar. 19, 2019) (quoting *Riles v. Semple*, No. 18-327-PR, 2019 WL 974678, at *2 (2d Cir. Feb. 27, 2019)).

The court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, "even a pro se plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Franklin v. Liberty Mut. Ins. Co.*, No. 08 Civ. 7120, 2010 WL 5758984, at *3 (S.D.N.Y. Oct. 22, 2010).

When a *pro se* plaintiff's pleading fails to comply with the requirements of Rule 8, "a district court should not dismiss the action 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Onwuka v. Taxi Limousine Comm'n*, No. 10-CV-5399 SLT LB, 2014 WL 1343125, at *3 (E.D.N.Y. Mar. 31, 2014) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).  "Although a *pro se* litigant should generally be given leave to file an amended complaint," the court may decline to do so if "[p]laintiff was already afforded an opportunity amend his Complaint and he ignored the guidance provided in the M&O in filing the present Amended Complaint" *Lopez v. Ambro*, No. 19-CV-3596(JS)(AKT), 2020 WL 364135, at *4 (E.D.N.Y. Jan. 21, 2020); *see also De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 72 (2d Cir.1996).

## II. Federal Rule of Civil Procedure 12(b)(6)

In order to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its
face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  *Id*.
The facts alleged must "raise a right to relief above a
speculative level."  *TSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493
F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).
When a complaint alleges employment discrimination, plaintiff
has a "minimal burden" of alleging facts that suggest an
"inference of discriminatory motivation."  *Littlejohn v. City of
N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015).

        When considering a motion to dismiss under Rule
12(b)(6), a court must construe the complaint liberally by
"accepting all factual allegations in the complaint as true and
drawing all reasonable inferences in the plaintiff's favor."
*Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).
Though the court accepts factual information as true, this
doctrine is "inapplicable to legal conclusions." *Iqbal*, 556 U.S.
at 678.  It is the responsibility of the court "not to weigh the
evidence that might be presented at a trial but merely to
determine whether the complaint itself is legally sufficient."
*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

"Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the conclusory allegations in the pleadings as true in deciding a motion to dismiss." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (internal citation and quotations omitted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of the complaint where plaintiff's "attenuated allegations" were "contradicted [] by more specific allegations in the complaint"); *Salahuddin*, 992 F.2d at 449 (dismissing claim that was based on "wholly conclusory and inconsistent allegations").

## DISCUSSION

### I. Sufficiency of the Pleadings under Rule 8(a)(2)

Plaintiff's 60-page FAC contains 44 single-spaced pages of factual allegations spanning over 20 years, and alleging violations under the FMLA, ADA, § 1981, the ADEA, the Rehabilitation Act and the SHRL. (Am. Compl. at 3-4.) Defendants correctly note that plaintiff's "allegations are not numbered, are not in chronological order, and are not in any logical or temporal order," and many allegations fall outside the statute of limitations. (ECF No. 22 at 14.) Moreover, plaintiff's allegations do not clearly and plainly state the elements of her claims. Despite granting plaintiff an

opportunity to amend her complaint, the FAC does not satisfy the
requirements of Rule 8.

Dismissal "is usually reserved for those cases in
which the complaint is so confused, ambiguous, vague, or
otherwise unintelligible, that its true substance, if any, is
well disguised." *Salahuddin* 861 F.2d at 42; *Prezzi v. Schelter*,
469 F.2d 691, 692 (2d Cir. 1972) (dismissing 88-page *pro se*
complaint without leave to amend).  Here, given the rambling,
confused and prolix allegations, the court finds that granting
plaintiff an opportunity to amend her complaint a second time
would be futile.  Thus, the court dismisses the FAC on the
independent ground that it violates Rule 8.  Even if the FAC
were not unnecessarily prolix and jumbled, the court would find
that plaintiff has failed to state a claim upon which relief can
be granted.

## II. Plaintiff's Title VII, ADA, ADEA and Rehabilitation Act Claims

### A. Exhaustion

In order to assert claims of workplace discrimination
under Title VII, the ADA, or the ADEA, a plaintiff must first
exhaust her administrative remedies by filing a complaint with
the Equal Employment Opportunity Commission within 300 days of
the alleged misconduct.  42 U.S.C. § 2000e-5(e); *Hewitt v.
N.Y.C. Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d

Cir. 2013) ("As a precondition to filing an action in federal court under Title VII ... a litigant must first have exhausted [her] administrative remedies by timely filing a charge of discrimination with the [EEOC]."); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."); *Spillers v. City of New York Health & Hosps. Corp.*, No. 15-CV-06472 (PKC), 2017 WL 4326505, at *3 (E.D.N.Y. Sept. 28, 2017), *aff'd sub nom. Spillers v. New York City Health & Hosps. Corp.*, 763 F. App'x 138 (2d Cir. 2019) ("A plaintiff must exhaust [her] administrative remedies by timely filing a complaint with the EEOC, prior to filing a complaint in federal court alleging violations of Title VII or the ADA.") (per curiam).

If a plaintiff fails to file a complaint with the EEOC within the 300-day period, plaintiff is generally barred from bringing the claim in federal court. *See* 42 U.S.C. § 2000e-5(e)(1); *Elmenayer v. ABF Freight System, Inc.,* 318 F.3d 130 (2d Cir. 2003); *Spillers*, 763 F. App'x 138 (2d Cir. 2019) ("Claims that were not asserted before the EEOC may be litigated only if they are reasonably related to those that were filed with the agency."). Additionally, if plaintiff files a timely complaint

with the EEOC, she has 90 days upon receipt of a "right to sue" letter in which to file a lawsuit in federal court, or else her claim will be time-barred.  42 U.S.C. § 2000e-5(f)(1); *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 127 (2d Cir. 2006).

Plaintiff filed an administrative complaint with the SDHR on December 27, 2017.  (ECF No. 21-1; Am. Compl. at 21.) The complaint was not, however, cross-filed with the EEOC at any time.  (Am. Compl.at 10-12, 21.)  The SDHR ruled in favor the DOHMH, finding plaintiff's claims both procedurally barred and without merit.  (*Id.*)  Plaintiff had previously filed a complaint with the EEOC in 2012, which was "closed" in 2013. (*Id.* at 48-49.)

Defendant asserts that because plaintiff did not also file or request the SDHR to cross-file with the EEOC, the instant complaint must be dismissed for a failure to exhaust administrative remedies.  (ECF No. 22, at 22-23.)[7]  The court agrees.  Though some district courts within this circuit have stated that "[a] charge filed with the NYSDHR may be deemed a charge filed with the EEOC for exhaustion purposes, pursuant to the Workshare Agreement between the NYSDHR and the EEOC," they have also noted that "for the NYSDHR charge to serve as a predicate for a [] claim in federal court, the plaintiff must

---

[7] Defendant further points out that "plaintiff does not allege or contend that she intended her SDHR complaint to be dual-filed with the EEOC at the time she filed it."  (ECF No. 21 at 22-23.)

have indicated that she wished her NYSDHR charge to be a 'dual filing' with the EEOC." *Pustilnik v. Hynes*, No. 96-CV-3989 (JG), 1998 WL 813411, at *4 (E.D.N.Y. July 21, 1998) (internal citation omitted); *see also Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 309 (2d Cir. 1996) ("If . . . the charging party initially presents a document to the state agency and requests that the charge be presented to the EEOC, the charge will be deemed to be filed with the EEOC [upon the happening of a stated condition].") (internal quotation marks and brackets omitted). Though plaintiff states SDHR "failed to submit a complaint to EEOC," her complaint to the SDHR gave no indication that she wished the complaint to be dual-filed with the EEOC.  (Am. Compl. at 21; *see generally* ECF No. 21-1.)  Thus, plaintiff's filing of the SDHR complaint cannot be construed as having been dual-filed with the EEOC.

Similarly, in order to bring a Rehabilitation Act claim, a plaintiff is required to seek EEOC counseling within 45 days of the alleged discriminatory act, file an EEOC complaint regarding the discrimination, and then bring suit within 90 days of the agency's decision, or within 180 days of filing the EEOC complaint if the agency does not render a decision. *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000).

**B. Timeliness**

Even assuming, *arguendo*, that plaintiff's SDHR
complaint had been dual-filed with the EEOC, plaintiff's ADA,
ADEA, and Title VII claims in the amended complaint are still
untimely and are thus dismissed.

Claims brought under the ADA, ADEA and Title VII must
be brought within 300 days of the misconduct giving rise to the
claim. *See Hewitt,* 535 F. App'x at 45; *Legnani,* 274 F.3d at
686; *Spillers,* WL 4326505, at *3; *Szuszkiewicz v. JPMorgan Chase
Bank*, 12 F. Supp. 3d 330, 338 (E.D.N.Y. 2014) ("[A]ny claim
arising out of discriminatory acts that took place more than 300
days before [plaintiff] filed [her] EEOC complaint [] is
extinguished unless an exception to the exhaustion requirement
applies.")  Plaintiff filed her SDHR complaint on December 27,
2017 and, thus, allegations concerning conduct that occurred
prior to March 1, 2017 are time-barred.  Plaintiff's retirement
became effective on January 26, 2017, more than one month prior
to the beginning of the limitations period.  Thus, plaintiff's
Title VII, ADA, and ADEA claims are dismissed as untimely.

Although plaintiff states that she "signed" her SDHR
complaint on December 15, 2017, (*see* ECF No. 14 at 6-8), it is
undisputed that the SDHR "received" her complaint on December
27, 2017.  (*See* Am. Compl. at 10.)  Additionally, plaintiff's
sworn SDHR complaint states that, "Date most recent or

continuing discrimination took place is 2/3/2017." (ECF No. 21-1 at 2.)  Whether the court uses the date of plaintiff's official retirement or the date of the last discriminatory act as alleged by plaintiff, her claims would be, and are, time-barred.  Plaintiff filed her SDHR complaint on December 27, 2017, which is 326 days after February 3, 2017. (Am. Compl. at 10.)[8]  Plaintiff has offered no basis to toll the statute of limitations. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (equitable tolling is only appropriate in "rare and exceptional circumstances," in which a party is prevented in some extraordinary way from exercising his rights") (internal citations and brackets omitted). Accordingly, Plaintiff's ADA, ADEA and Title VII claims are dismissed as untimely.

### C. Status of EEOC "Right to Sue" Letter

In plaintiff's FAC, she attached a letter from the Department of Labor, but not a Notice of Right to Sue from the EEOC. (Am. Compl. at 14-15.)  When asked in the federal form complaint: "[h]ave you received a Notice of Right to Sue from the EEOC?," the plaintiff checked both the "Yes" and "No" boxes, and wrote in "US Dept of Labor note" dated July 28, 2016 and

---

[8] The SDHR determination, which plaintiff filed with the amended complaint, clearly states that "[o]n 12/27/2017, Larisa Tsekhanskaya filed a verified complaint with the New York State Division of Human Rights." (Am. Compl. at 10.)

received August 10, 2016.  (Am. Compl. at 6.)  A letter from the Department of Labor is not a substitute for a Notice of Right to Sue letter from the EEOC.  *Romanick v. Corning*, Inc., No. 13-CV-6006-FPG, 2016 WL 1275671, at *2 (W.D.N.Y. Mar. 31, 2016). Plaintiff has not plausibly alleged in the pleadings or in her opposition filings to the present motion, that she filed an EEOC complaint and received an EEOC Notice of Right to Sue.

### III. **FMLA Claims**

Dismissal of a complaint by way of statute of limitations "is appropriate only if a complaint clearly shows the claim is out of time."  *McCabe v. Lifetime Entm't Servs.*, LLC, No. 17-CV-908-ERK-SJB, 2018 WL 1521860, at *5 (E.D.N.Y. Jan. 4, 2018), *subsequently aff'd,* 761 F. App'x 38 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 81, 205 L. Ed. 2d 27 (2019)(quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  FMLA claims are subject to a two-year statute of limitations, and this time limit is extended to three years if the FMLA violations are "willful."  *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (quoting *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam)). The Second Circuit has stated that a "willful" violation occurs when an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited."  *Offor*, 676 F. App'x at 53 (2d Cir. 2017) (quoting *Porter*, 392 F.3d at 531 (2d

Cir. 2004) (per curiam)).  As further noted by the Second Circuit, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful[.]" *Porter*, 392 F.3d at 531.

Defendants assert that plaintiff's FAC does not allege facts "that might imply willfulness and a three-year statute of limitations" for plaintiff's FMLA claims.  (ECF No. 22, at 31.) Thus, the defendant argues that the two-year statute of limitations should govern, and that plaintiff's FMLA allegations before December 20, 2016 should be considered time-barred. (*Id.*)  The court agrees.

Plaintiff has alleged no plausible facts supporting the court's application of the three-year statute of limitations for willful violations of the FMLA.  (Am. Compl. at 4, 22, 59 (stating, in conclusory fashion, that FMLA violations were "willful").)  Because plaintiff commenced this action on December 20, 2018, any allegations concerning conduct prior to December 20, 2016 are time-barred for purposes of the FMLA. Because plaintiff's amended complaint does not allege that plaintiff made any FMLA request that was denied by defendants after December 20, 2016, her FMLA claims are entirely time-barred and, accordingly, are dismissed.

**IV. Section 1981 Claim**

The United States Supreme Court has held that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 702 (1989); *see also Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).[9]  In order to prevail on a claim for damages against a state actor, a plaintiff must show that the violation of his or her rights was "caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Id.* at 735-36.

Courts within this circuit generally dismiss § 1981 claims on the grounds that such claims do not provide a private right of action against a state actor. *See Anderson v. New York City Dep't of Fin.,* No. 19-CV-7971 (RA), 2020 WL 1922624, at *3 (S.D.N.Y. Apr. 21, 2020) ("[p]laintiff's § 1981 claim must be dismissed. Section 1981 does not provide a private cause of action against a state actor, as Defendant is here").  Courts

_____

[9] Plaintiff asserts, without citing to any legal authority, that "NYC DOHMH is not 'state actors'."  (ECF No. 18, at 28.)  Plaintiff's argument is meritless, as defendant DOHMH, an agency of the City of New York, is not a suable entity.  N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *EZ Pawn Corp. v. City of New York*, 390 F. Supp. 3d 403, 417 (E.D.N.Y. 2019) (dismissing NYPD which is a non-suable entity).  Further, lawsuits against city agencies are construed as lawsuits against the City itself, which is a state actor.  *Duplan*, 888 F.3d 612, 619 (2d Cir. 2018).

may, in their discretion, "construe" a § 1981 claim as being brought pursuant to § 1983. *See Farooq v. New York City Health & Hosps. Corp.*, No. 19-CV-6294 (JMF), 2020 WL 5018387, at *6 (S.D.N.Y. Aug. 25, 2020) (citing *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 517 n.5 (E.D.N.Y. 2009)). *Cf. Beharry v. City of New York*, No. 18-CV-2042 (AJN), 2019 WL 634652, at *3 (S.D.N.Y. Feb. 14, 2019) (dismissing a § 1981 claim brought against a state actor in light of *Duplan* where plaintiff had not alleged the elements of a § 1983 claim).

Despite her lengthy FAC, plaintiff has neither alleged a claim pursuant to 42 U.S.C. § 1983, nor has she alleged the elements of a § 1983 claim. (*See generally* ECF 1; ECF 11; ECF 14; *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 193 (E.D.N.Y. 2016) (quoting *Littlejohn* 795 F.3d at 307).) It is well-settled law that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," where the employee does not alleged that she was discriminated against "pursuant to an expressly adopted official policy" or a "longstanding practice or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). None of the alleged violative conduct was performed pursuant to any official policy, or longstanding practice or custom.

Accordingly, the court dismisses plaintiff's § 1981 claim as a matter of law. *Beharry*, 2019 WL 634652, at *3.

**V. SHRL Claim**

Under the SHRL, an individual who files a complaint with the SDHR is barred from filing a lawsuit in state or federal court in regard to the same cause of action.  N.Y. Exec. L. § 297(9).  As courts within this circuit have noted, once an individual pursues administrative relief for a SHRL claim, he has elected his remedy, and any subsequent judicial action based upon the same events is jurisdictionally barred.  *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 188 (S.D.N.Y. 2011) ("The election of remedies bar also precludes consideration of any claim – whether brought under the SHRL or the CHRL – arising out of the same incident on which [a plaintiff's] SDHR complaint was based.").

Here, plaintiff filed an SDHR complaint on December 27, 2017, in which she alleged discrimination and retaliation on the basis of national origin and disability.  (ECF No. 21-1.) Plaintiff's factual allegations in that complaint are substantively identical to the ones she has made in her FAC, and plaintiff is barred from pursuing the same claims in federal court, after having elected a state remedy.  N.Y. Exec. L. § 297(9).  "The election of remedies bar also precludes consideration of any claim . . . arising out of the same

incident on which [plaintiff's] SDHR complaint was based."
*Higgins*, 836 F. Supp. 2d at 188.

The SDHR's Order dated July 5, 2018 found that there
was "NO PROBABLE CAUSE to believe that the respondent has
engaged in or is engaging in the unlawful discriminatory
practice complained of."  (Am. Compl. at 11.)  Specifically, the
SDHR determined that their investigation did "not support that
Respondent violated the NYS Human Rights Law" and found that
"Respondent ha[d] provided legitimate non-discriminatory reasons
for its treatment of [plaintiff's] employment."  (*Id.* at 11-12.)
Plaintiff appears not to have appealed the SDHR's Order within
60 days, as required.  (*Id.*)  As defendants correctly note,
issue preclusion now bars plaintiff's relitigation of claims
actually litigated before the SDHR.  *Higgins*, 836 F. Supp. 2d at
188 (collecting cases).[10]  Because plaintiff's amended complaint
seeks to relitigate claims that had been adjudicated before the
SDHR, the amended complaint is also dismissed on this
independent ground.

**V. Conclusion**

For the foregoing reasons, the court **grants**
defendants' motion to dismiss the amended complaint in its

---

[10] Further, the record reflects that plaintiff was represented by counsel at
the prior proceeding.  (Am. Compl. at 10-12; ECF No. 19 at 10; *see Saudagar
v. Walgreens Co.*, No. 18 CIV. 437 (KPF), 2019 WL 498349, at *9 (S.D.N.Y. Feb.
8, 2019).

entirety and with prejudice.  The court certifies pursuant to 28 U.S.C. Section 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment in favor of defendants, close the case, mail a copy of this Memorandum and Order and the judgment to plaintiff and note service on the docket.

**SO ORDERED.**

Dated:     September 29, 2020
           Brooklyn, New York

                                        /s/
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge
                              Eastern District of New York